IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NICHOLE SUMPTER          :
                         :          CIVIL ACTION
        v.               :          No. 13-988
                         :
CAROLYN W. COLVIN        :

O'NEILL, J.                                        March 27, 2014

## MEMORANDUM

Now before me are objections of defendant the Acting Commissioner of Social Security Carolyn W. Colvin to the Report and Recommendation of United States Magistrate Judge David R. Strawbridge on plaintiff Nichole Sumpter's claim.[1] Plaintiff seeks review of the final decision of the Commissioner denying her application for Supplemental Social Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 301, et seq. After consideration of the Report and Recommendation, defendant's objections thereto and the administrative record, and for the reasons that follow, I conclude that a remand to the Commissioner for further review is required and therefore will approve the recommendation of U.S. Magistrate Judge Strawbridge.

## BACKGROUND

Plaintiff's medical history is set forth in detail in the Report and Recommendation and will be repeated here only where necessary to my determination of whether the ALJ's assessment is supported by substantial evidence. Plaintiff protectively applied for SSI on June 15, 2009 alleging disability beginning February 12, 2008. R. 136-39. Plaintiff was 38 years old when she filed her SSI application. R. 42. She possessed a GED and had a work history of approximately 23 years as a Certified Nursing Assistant until 2005 when her medical problems began. R. 23-24. She has a history of uterine fibroids and fibroid pain and also problems with her back and

---

[1]          Plaintiff did not file a response to defendant's objection.

neck exacerbated by her fall down flights of steps in 2008 and 2009.  R. 25, 407, 427-30.

Plaintiff appeared pro se in a hearing before Administrative Law Judge Daniel L. Rubini on March 14, 2011.  R. 18-33.  On March 24, 2011, the ALJ issued his decision finding that plaintiff had not been under a disability within the meaning of the Social Security Act since the day she filed her application.  Under the Social Security Act, a claimant is disabled if she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than twelve (12) months."  42 U.S.C. § 423(d)(1)(A); see also 20 C.F.R. § 404.1505.  Disability claims are evaluated using a five-step sequential analysis determining whether a claimant:  (1) is currently employed; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can perform past relevant work; and (5) if not, can perform other work in view of her age, education, and work experience.  20 C.F.R. § 404.1520; see also Williams v. Sullivan, 970 F.2d 1178, 1180 (3d Cir. 1992).

At step two, the ALJ found that plaintiff's cervical low back pain, mood disorder, post-traumatic stress disorder and abdominal pain due to multiple uterine fibroids, alone and in combination, were "severe" within the meaning of the regulations and may impose more than the minimal limitations on her ability to perform basic work activities.  R. 51.

At step three, the ALJ noted that he "ha[d] considered, generally the Listing of Impairments in light of the specific physical findings in the case record and had concluded that the claimant does not have an impairment that meets the requirements of any listed impairment." Id.  Specifically, the ALJ noted that he considered the listing criteria of sections 1.00 (Musculoskeletal System), 1.04 (Disorders of the Spine), 13.00 (Malignant Neoplastic Diseases) and 12.04 (Affective Disorders).  R. 51-52.

At step four, the ALJ summarized his review of plaintiff's medical records.[2] He noted that in regards to her mental impairments, she began mental health treatment in December 2010 and an initial psychiatric evaluation diagnosed her with mood disorder, PTSD and found her to have a Global Assessment Functioning (GAF) of 50. R. 54. He also observed that plaintiff "only began treatment a few months ago, is being treated with medication, and has attended only a few therapy sessions at this point." R. 55. He noted that "[h]er providers have not submitted any records at this time to suggest that she is incapable of work activities." Id. He considered the December 2009 finding of Dr. Joseph Kowalski that plaintiff was not in treatment at the time and had no mental status abnormalities. Id. The ALJ noted that Dr. Kowalski found that plaintiff's limitations as to activities of daily living were more a result of physical limitations than mental limitations and he gave Dr. Kowalski's opinion "appropriate weight." Id. Similarly, he wrote that plaintiff "is given the full benefit of the doubt as to her mental impairments with the limitations" set forth in her RFC. Id.

The ALJ concluded that plaintiff has "the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b)" with limitations that the work should be "unskilled in consideration of her mild mental limitations which affect her ability to understand, carry out, and remember simple instructions, to respond appropriately to supervision, coworkers and usual work limitations, and to deal with changes in a routine work setting . . . ." R. 53. He noted in his

---

[2]    Step four of the sequential evaluation process requires the ALJ to consider whether the claimant retains the capacity to perform her past relevant work. Burnett v. Comm'r Soc. Sec. Admin., 220 F.3d 112, 118-19 (3d Cir. 2000) (citations omitted). If she meets the burden of demonstrating an inability to return to her past relevant work, the evaluation moves to the final step where the burden of production shifts to the Commissioner to demonstrate that the claimant is capable of performing other available work existing in significant numbers in the national economy, consistent with her her medical impairments, age, education, past work experience, and residual functional capacity. Id.

decision that the Vocational Expert's testimony of jobs that existed in the economy for an individual with factors such as claimant's age, education, work experience and residual functional capacity is consistent with the information contained in the Department of Labor's Dictionary of Occupational Titles (DOT). He determined that plaintiff would be able to perform the requirements of representative occupations such as Surveillance System Monitor and Blood Donation Assistant and therefore found her not to be disabled. R. 56-57.

Plaintiff with the assistance of counsel, then requested review of the ALJ's decision but the Appeals Council denied her request on January 29, 2013. R. 1-6. Plaintiff commenced the instant action on February 25, 2013. Dkt. Nos. 1-3. Plaintiff asserts that the ALJ's decision should be vacated or her case should be remanded because the ALJ did not: (1) adequately explain his finding that plaintiff does not meet or equal the listing of impairments and ignores evidence that plaintiff has a significant cognitive impairment to equal section 12.05(C) of the Listing of Impairments; (2) include all of plaintiff's limitations in his questioning of the Vocational Expert or meet his obligations under Social Security Ruling 00-4p to inquire of the VE whether there was conflict between the expert's testimony and DOT; and (3) obtain an adequate waiver of her right to representation and she suffered prejudice as a result. See Dkt. No. 8 (Pl. Br.).

### STANDARD OF REVIEW

In assessing defendant's objections, I must evaluate de novo those portions of the Report and Recommendation to which objection has been made. 28 U.S.C. § 636(b)(1)(C). I may accept, reject, or modify in whole or in part the Magistrate Judge's findings or recommendations. Id.; see also Brophy v. Halter, 153 F. Supp. 2d 667, 669 (E.D. Pa. 2001). The issue to be addressed on appeal from a denial of SSI benefits is whether the Commissioner's decisions are

supported by substantial evidence.  See 42 U.S.C. § 405(g); see also Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted).  "It is more than a mere scintilla of evidence but may be less than a preponderance." Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988) (citation omitted).

Determining whether substantial evidence exists is "not merely a quantitative exercise." Gilliland v. Heckler, 786 F.2d 178, 183 (3d Cir. 1986), citing Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983). "A single piece of evidence will not satisfy the substantiality test if the [s]ecretary ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)." Id.  Substantial evidence exists only "in relationship to all the other evidence in the record." Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981).  My determination "must take into account whatever in the record fairly detracts from its weight." Shore v. Colvin, No. 3:12-CV-00441, 2013 WL 5439142, at *3 (M.D. Pa. Sept. 27, 2013), citing Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971).  To determine whether a finding is supported by substantial evidence, I must review the record as a whole.  See 5 U.S.C. § 706.

"Overall, the substantial evidence standard is deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence." Schaudeck v. Comm'r Soc. Sec. Admin., 181 F.3d 429, 433 (3d Cir. 1999).  "It is not the role of the Court to re-weigh the evidence of record or substitute its own conclusions for that of the ALJ." Wells v. Astrue, No. 10–1811, 2011 WL 940492, at *2 (E.D. Pa. Feb. 25, 2011), citing Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002); see also Fargnoli v. Massanari, 247 F.3d

34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

    "An ALJ is not required to cite to every piece of evidence in the record when rendering his decision." Thomas v. Astrue, No. 10-2175, 2011 WL 2437143, at *1 (E.D. Pa. June 16, 2011).  However, the ALJ's decision must allow the court to determine whether any rejection of pertinent or probative evidence was proper.  See Johnson v. Comm'r Soc. Sec., 529 F.3d 198, 203-04 (3d Cir. 2008); see also Fargnoli, 247 F.3d at 40.  Thus, the ALJ must provide "not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected.  In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." Cotter, 642 F.2d at 705.

## DISCUSSION

## I.     Equivalence to Listing 12.05(C) Intellectual Disability

    In his Report and Recommendation, Judge Strawbridge concludes that the ALJ erred by failing to consider whether plaintiff functionally equaled 12.05(C).  Dkt. No. 12 at ECF pp. 15-16.  The Court of Appeals has held that to satisfy the (C) criterion for Listing 12.05 a claimant must show that the evidence demonstrates:  (1) her subaverage general intellectual functioning with deficits in adaptive functioning prior to her reaching age twenty-two, and; (2) an IQ score of 60–70 in conjunction with a physical or mental impairment.  Beard v. Astrue, No. 10-1425, 2012 WL 470206, at *11 (W.D. Pa. Feb. 14, 2012), citing Cortes v. Comm'r Soc. Sec., 255 F. App'x 646, 651 (3d Cir. 2007); Stremba v. Barnhart, 171 F. App'x 936, 938 (3d Cir. 2006); Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003).

The Commissioner objects and argues that substantial evidence supports the finding that plaintiff did not medically equal 12.05(C) and therefore remand is not appropriate.  See Dkt. No. 13 at ECF pp. 1-2.  Specifically, defendant argues that as an initial matter, plaintiff did not meet the capsule definition for mental impairment because she did not demonstrate deficits in adaptive functioning; and also that the SSA's Program Operations Manual System (POMS) directive for determining medical equivalence to 12.05(C) is an internal agency manual with guidelines that are bereft of the force of law.  See id. at ECF p. 3.  I find defendant's second argument persuasive.

## A.    Adaptive Functioning

As the Report and Recommendation notes, the Commissioner points to parts of the record which may support a conclusion that plaintiff does not meet the capsule definition for Listing 12.05 necessitating that she demonstrate deficits in adaptive functioning that manifested before age 22.  Dkt. No. 12 at ECF p. 16.  "The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."  SEC v. Chenery Corp., 318 U.S. 80, 87 (1943); Fargnoli, 247 F.3d at 44 n.7 (applying Chenery to social security cases).  As such, "'[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision;' the Commissioner may not offer a post-hoc rationalization."  Keiderling v. Astrue, No. 07–2237, 2008 WL 2120154, at *3 (E.D. Pa. May 20, 2008), quoting Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000).  The ALJ did not include in his decision any discussion of plaintiff's adaptive functioning, much less the parts of the record the Commissioner sets forth as evidencing plaintiff's failure to demonstrate those deficits, and I cannot credit such a discussion to him now.[3]  See Schuster v. Astrue, 879 F. Supp. 2d 461, 468 (E.D. Pa. 2012) ("Although the

---

[3]      The Commissioner argues that relevant evidence includes that:  plaintiff was "in

documents were part of the administrative record in this case, the ALJ did not even mention

them, let alone discuss their import.  In turn, this Court cannot determine what weight, if any, the

ALJ gave to such documents when rendering her decision.  To now find that these records can

constitute substantial evidence sufficient to support the ALJ's [decision] . . . contravenes well-

established legal principles condemning such post-hoc justifications.").  Accordingly, I will

overrule defendant's objections to the extent that she is now offering justification for an analysis

that is absent in the ALJ's decision.

>    **B.    POMS Guidelines**

Plaintiff concedes that her 1986 Verbal IQ score of 72 does not facially meet the

requirement for a finding of 12.05(C) impairment.  See Dkt. No. 8 at ECF p. 11.  However, the

POMS guidelines for determining medical equivalence to Listing 12.05(C) provide that "slightly

higher IQ's (e.g., 70-75) in the presence of other physical or mental disorders that impose

additional and significant work-related limitation of function may support an equivalence

determination."  POMS DI 24515.056(D)(1)(c).  Therefore, plaintiff argues, the ALJ's finding at

step two that she was burdened by severe impairments of "cervical low back pain, mood

disorder, post-traumatic stress disorder, and abdominal pain due to multiple uterine fibroids," R.

51, in conjunction with the POMS 12.05(C) guidelines, may support an equivalency

determination for a finding of disability.  Id. at ECF pp. 11-12.  The issue here is whether the

ALJ was required to address plaintiff's limitations in consideration of the POMS guidelines.  I

find that he was not.

An ALJ is required "to identify the relevant listed impairment in the federal regulations

---

regular education classes for 97.5% of her instruction," completed high school, worked as a
certified nurse's assistant for seven years, did not stop working because of any "cognitive
impairment," and Dr. Viqar noted that she was of average intelligence.  Dkt. No. 13 at ECF p. 6.

that compares with the claimant's impairment" and "'explain his findings at step 3, including an analysis of whether and why [the claimant's] . . . impairments . . . are or are not equivalent in severity to one of the listed impairments.'" Shaw v. Astrue, No. 11-139J, 2012 WL 4372521, at *4 (W.D. Pa. Sept. 24, 2012), quoting Burnett, 220 F.3d at 120 n.2.  The Court of Appeals has stated that while "[POMS] administrative interpretations are not products of formal rulemaking, they nevertheless warrant respect."  Artz v. Barnhart, 330 F.3d 170, 176 (3d Cir. 2003), citing Wash. St. Dept. Soc. & Health Servs. v. Estate of Keffeler, 537 U.S. 371, 385 (2003);  Sable v. Velez, 388 F. App'x 235, 237 n.2 (3d Cir. 2010); see also Covington v. Astrue, No. 10-2874, 2011 WL 1539786, at*16 (E.D. Pa. Apr. 22, 2011) (observing that while no court in our Circuit has yet considered the effect of the POMS guidelines on the evaluation of Listing 12.05(C), other courts have faulted the ALJ for disregard of the analysis according to the guidelines).

However, an ALJ is not required to identify and compare plaintiff's alleged impairments with the POMS guidelines for the listed impairments.  The Court of Appeals has made clear on multiple occasions that "[POMS] regulations do not have the force of law."  Edelman v. Comm'r Soc. Sec., 83 F.3d 68, 71 n.2 (3d Cir. 1996); Bordes, 235 F. App'x at 859 ("[POMS] lack the force of law and create no judicially-enforceable rights.").  Similarly, the Court of Appeals has found in reference to another SSA manual, the Hearings, Appeals, and Litigation Law (HALLEX) Manual, that "[i]nternal social security manuals lack the force of law and do not bind the Social Security Administration."  Chaluisan v. Comm'r Soc. Sec., 481 F. App'x 788, 791 (3d Cir. 2012).  In a non-precedential decision, the Court of Appeals in Bordes found that POMS provisions[4] requiring signatures on claimants' requests for Appeals Council reviews lack the force of law and therefore "d[id] not aid" the plaintiff in the case who had submitted her appeal

---

[4]        POMS GN 03104.200(B)(5) or GN 0201.010(B).

without a signature and who claimed that the Appeals Council followed fundamentally unfair procedures by a review of her unsigned request in contravention of POMS and HALLEX requirements.[5]  See Bordes, 235 F. App'x at 859.  The Court of Appeals ultimately found that POMS does not create judicially enforceable rights and duties.  Id.

 I find that the ALJ was not required to compare plaintiff's alleged impairments to the POMS guidelines for Listing 12.05(C) and will therefore will not adopt the Report to the extent that it recommends remand for the consideration of plaintiff's impairments in accordance with POMS guidelines.  Rather, I will remand for the following reasons.

## II.    Vocational Expert's Testimony

The Report did not arrive at a recommendation on plaintiff's claims of error in the ALJ's questioning of the Vocational Expert[6] which I find to be a necessary analysis here.

### A.      Plaintiff's Limitations

Plaintiff argues that the ALJ's questioning of the VE did not include all of the physical and mental limitations that the ALJ found her to have in his step four RFC assessment and therefore his conclusion that plaintiff was not disabled was not supported by substantial

---

[5]      The Court of Appeals observed that the Fifth Circuit "has taken a more stringent approach" in addressing an asserted violation of HALLEX, and in Newton v. Apfel, 209 F.3d 448 (5th Cir. 2000), ruled that "'[w]hile HALLEX does not carry the authority of law, this court has held that 'where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required.'"  Bordes, 235 F. App'x at 859 (citations omitted).  However, the Court of Appeals observed that the plaintiff's claim "would fail even under the Fifth Circuit's approach, because she has not shown she was prejudiced by the Appeals Council's review of her claim based on the unsigned request for review."  Id.  Here, I need not analyze whether plaintiff's claim would fail under the Fifth Circuit's Newton test because I find that remand is otherwise necessary.

[6]      Social Security regulations state that "a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work . . . ."  20 C.F.R. § 404.1560(b)(2).

evidence.  See Dkt. No. 8 at EFC pp. 13-15.  In his decision, the ALJ found plaintiff to have

postural limitations with respect to "climbing, balancing, stooping, kneeling, crouching and

crawling."  R. 53.  He also found her to have "environmental limitations" and that she should

avoid exposure to hazardous conditions such as "fumes, odors, dust, etc."  Id.  Similarly, the ALJ

found plaintiff to have mental limitations that affect her ability "to understand, carry out, and

remember simple instructions."  Id.  The ALJ's decision noted that in order "to determine the

extent to which [plaintiff's] limitations erode the unskilled light occupational base, [he] asked the

vocational expert whether jobs exist in the national economy for an individual with the

claimant's age, education, work experience and residual functional capacity."  R. 56.  However,

the ALJ's questioning to the VE during the administrative hearing consisted only of this short

query:  "Look at unskilled, light, and sedentary and give me about two [positions] each."  R. 31.

Plaintiff argues that none of the limitations the ALJ found plaintiff to have were incorporated

into his questioning of the VE.  I agree.

     The Court of Appeals has held that "'[a] hypothetical question must reflect all of a

claimant's impairments that are supported by the record; otherwise the question is deficient and

the expert's answer to it cannot be considered substantial evidence [of the ALJ's decision]."

Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987) superseded by statute on other

grounds, 20 C.F.R. § 404.983, as recognized in Holmes v. Astrue, No. 08-545, 2009 WL 688914,

at *12 (W.D. Pa. Mar. 12, 2009) (emphasis in original); Ramirez v. Barnhart, 372 F.3d 546, 552

(3d Cir. 2004) (same).  The Court of Appeals has observed that while "[w]e do not require an

ALJ to submit to the vocational expert every impairment alleged by a claimant", "the

hypothetical posed must accurately portray the claimant's impairments and [ ] the expert must be

given an opportunity to evaluate those impairments as contained in the record."  Rutherford v.

Barnhart, 399 F.3d 546, 554 (3d Cir. 2005) (emphasis in original).  Further, "great specificity" is

required when an ALJ incorporates a claimant's limitations into a hypothetical.  Ramirez, 372

F.3d at 554-55 (citation omitted).

       In the instant case, I find that the ALJ's hypothetical to the VE restricting plaintiff to

unskilled light and unskilled sedentary work fails to convey any environmental or postural

limitations since "light" and "sedentary" are strength ratings of the physical demands required in

specific positions unrelated to postural requirements.  See Dictionary of Occupational Titles,

U.S. Department of Labor, Appendix C, Components of the Definition Trailer (4th ed. rev. 1991).

Moreover, the ALJ's hypothetical restricting plaintiff to unskilled work cannot be sufficiently

reflective of the "mild mental limitations" that he found her to have, especially where his

restriction contradicts Social Security Ruling 85-15 that the ALJ cites in support of his decision.[7]

See Stewart v. Astrue, No. 4:11-CV-00978, 2012 WL 6538516, at *6 (M.D. Pa. Dec. 14, 2012)

("Although the administrative law judge limited [the plaintiff] to unskilled work, this does not

adequately reflect [the] limitation in concentration, persistence and pace" that the ALJ found the

plaintiff to have moderate difficulties with.).

       My review of the administrative record reveals that the ALJ's questioning of the VE did

_____

       [7]       The ALJ's decision states that plaintiff has "the residual functional capacity to
perform light work" with limitations that the work should be "unskilled in consideration of her
mild mental limitations which affect her ability to understand, carry out, and remember simple
instructions, to respond appropriately to supervision, coworkers and usual work limitations, and
to deal with changes in a routine work setting per SSR 85-15."  R. 53.  Yet, Social Security
Ruling 85-15 states clearly that "[t]he basic mental demands of competitive, remunerative,
unskilled work include the abilities (on a sustained basis) to understand, carry out, and
remember simple instructions; to respond appropriately to supervision, coworkers, and usual work
situations; and to deal with changes in a routine work setting."  SSR 85-15, 1985 WL 56857, at
*4 (Jan. 1, 1985).  It further states "[a] substantial loss of ability to meet any of these basic work-
related activities would severely limit the potential occupational base.  This, in turn, would
justify a finding of disability because even favorable age, education, or work experience will not
offset such a severely limited occupational base."  Id.

not include all of the limitations he found plaintiff to have.  Consequently, the VE's testimony

cannot be considered to be substantial evidence supporting the ALJ's decision.

**B.** **SSR 00-4p**

Plaintiff also argues that the ALJ failed to meet his obligations under Social Security

ruling 00-4p that requires the ALJ to inquire of the VE any conflicts between her testimony and

the Dictionary of Occupational Titles list of requirements for jobs that exist in the national

economy.  See Burns, 312 F.3d at 119 ("[The] Social Security Administration has taken

administrative notice of the reliability of the job information contained in the [DOT].").  Social

Security Rulings are published under the Commissioner's authority and are binding on the Social

Security Administration.  Rivera-Negron v. Astrue, No. 12-3837, 2013 WL 5823713, at *3 n.5

(E.D. Pa. Oct. 30, 2013), citing Sullivan v. Zebley, 493 U.S. 521, 531 n.9 (1990).  SSR 00-4p in

relevant part states:

> The Responsibility To Ask About Conflicts
>
> When a VE or [Vocational Specialist] VS provides evidence about
> the requirements of a job or occupation, the adjudicator has an
> affirmative responsibility to ask about any possible conflict
> between that VE or VS evidence and information provided in the
> DOT.  In these situations, the adjudicator will:
>
> Ask the VE or VS if the evidence he or she has provided conflicts
> with information provided in the DOT; and
>
> If the VE's or VS's evidence appears to conflict with the DOT, the
> adjudicator will obtain a reasonable explanation for the apparent
> conflict.
>
> Explaining the Resolution
>
> When vocational evidence provided by a VE or VS is not
> consistent with information in the DOT, the adjudicator must
> resolve this conflict before relying on the VE or VS evidence to

> support a determination or decision that the individual is or is not
> disabled. The adjudicator will explain in the determination or
> decision how he or she resolved the conflict. The adjudicator must
> explain the resolution of the conflict irrespective of how the
> conflict was identified.

SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000).

"By its terms, SSR 00–4p . . . was designed to address the already-well-established (in this Circuit and elsewhere) obligation of an ALJ to develop the record during an adjudicative hearing." Rutherford, 399 F.3d at 556. Specifically, the ALJ's affirmative duty applies to the limited portion of the VE's testimony regarding the requirements of a job or occupation. Id. at 557. However, the Court of Appeals has also held that inconsistencies between VE testimony and DOT information may warrant reversal even where they do not violate the literal obligations of SSR 00-4p where there is no other substantial evidence in the record to support the ALJ's step five determination. Id. To determine whether the ALJ appropriately followed SSR 00-4p, I must consider: "(1) whether the VE testified about the requirements of a job or occupation that the claimant could perform; (2) whether the ALJ asked the VE if his or her testimony was consistent with the DOT; if the ALJ did not, whether there was an actual conflict between the VE's testimony and the DOT." Rivera-Negron, 2013 WL 5823713, at *4. If there was a conflict, the ALJ's failure to ask the VE about consistency with the DOT would not be harmless error. See id.

In the instant case, the VE testified at the hearing and in response to the ALJ's questioning that plaintiff could perform the requirements of "surveillance system monitor" and "blood donator unit assistant." R. 31. During the hearing the ALJ did not inquire of the VE whether her testimony was consistent with the DOT. See R. 18-33. In his decision however, the ALJ noted that "[p]ursuant to SSR 00-4p, the vocational expert's testimony is consistent with the

information contained in the Dictionary of Occupational Titles." R. 56. I find that there is no

basis in the record for the ALJ's conclusory assertion and the ALJ's error is not harmless as there

is in fact a conflict between the VE's testimony and information in the DOT.

Specifically, the VE testified that plaintiff would be able to perform the requirements of

the "surveillance system monitor" position which was a position increasing in number "because

of the casinos coming in[to the area]." R. 31. However, according to the DOT, the "surveillance

system monitor" position that the VE identified is in government service and is performed in

public transportation facilities rather than in casinos or gambling establishments.[8] The only

monitoring position in the DOT Amusement and Recreation category is that of a Gambling

Monitor.[9] It is not clear whether the VE was attempting to refer to the surveillance system

---

[8]    While the VE did not specify during the hearing what the DOT entry number of
the "surveillance system monitor," the ALJ in his decision identified the occupation as DOT
379.267-010. See R. 56.

[9]
            CODE: 379.367-010
            TITLE(s): SURVEILLANCE-SYSTEM MONITOR (government
            ser.)

            Monitors premises of public transportation terminals to detect
            crimes or disturbances, using closed circuit television monitors,
            and notifies authorities by telephone of need for corrective action:
            Observes television screens that transmit in sequence views of
            transportation facility sites. Pushes hold button to maintain
            surveillance of location where incident is developing, and
            telephones police or other designated agency to notify authorities
            of location of disruptive activity. Adjusts monitor controls when
            required to improve reception, and notifies repair service of
            equipment malfunctions.
            GOE: 04.02.03 STRENGTH: S GED: R3 M1 L3 SVP: 2 DLU: 86

            ***
            CODE: 343.367-014

monitor position or the gambling monitor position in her testimony.

The inconsistency between the two positions is significant because the VE was identifying a "sedentary" position in her reference to the surveillance system monitor when responding to the ALJ's questioning, but the DOT identifies the position of gambling monitor as requiring "light" strength as evident in the listing specifying "STRENGTH: L".  <u>See</u> R. 31.  Also significantly, the position of gambling monitor requires a higher level of specific vocational preparation (SVP: 7) over a period of  "2 years up to and including 4 years," compared to that of the surveillance-system monitor (SVP: 2) which is "anything beyond short demonstration up to and including 1 month."  DOT, Appendix C.  The gambling monitor position also requires a higher level of General Educational Development (GED) in the areas of Reasoning and Mathematical Development.  It is not clear from the ALJ's decision that plaintiff would be able to meet the R4 and M3 level requirements[10] of the gambling position given that he found that she

---

TITLE(s): GAMBLING MONITOR (amuse. & rec.)

Observes patrons and employees participating in gambling activities to detect infractions of house rules: Watches participants in games such as dice or cards to detect cheating, identify rule violators, and observe persons designated by superior. Speaks or signals to supervising personnel using hand, telephone, or voice to identify and supply information about suspected violators. May examine dice periodically to check for damage or substitution. May calculate winnings to verify payment made by dealer.
GOE: 04.02.03 STRENGTH: L GED: R4 M3 L3 SVP: 7 DLU: 77

DOT, 379.367-010; 343.367-014.

[10]    Reasoning level 4 development requires a claimant to be able to

apply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists.  Interpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form.

should be limited to work that is "unskilled in consideration of her mild mental limitations"  R.

53.

I find that the ALJ did not include all of plaintiff's limitations in his hypothetical to the

VE or satisfy the requirements of SSR 00-4p and will remand the matter for proper

consideration.  Having concluded that a remand to the Commissioner is necessary, I need not

address plaintiff's last argument for remand or the analysis of her argument in the Report.[11]

An appropriate Order follows.

---

(Examples of rational systems include: bookkeeping, internal
combustion engines, electric wiring systems, house building, farm
management, and navigation.).

DOT, Appendix C.  Mathematical level 3 development requires a claimant to be able to
"compute discount, interest, profit and loss; commission, markup, and selling price; ratio and
proportion; and percentage. Calculate surfaces, volumes, weights, and measures" with associated
skills in Algebra and Geometry.  Id.

[11]    Plaintiff claims that she suffered prejudice from her unknowing and unintelligent
waiver of representation in her administrative hearing.  See Dkt. No. 8 at ECF pp. 2-8.  The
Report and Recommendation found that while plaintiff's waiver was unknowing and
unintelligent, she did not suffer prejudice. Dkt. No. 12 at ECF pp. 11-13.  Here, I will only
observe that "[w]here the ALJ does not obtain a valid waiver of counsel, the burden is on the
Commissioner to show that the ALJ adequately developed the record."  Kummer v. Colvin, No.
12-413, 2013 WL 5467067, at *3 (W.D. Pa. Sept. 30, 2013), citing Vivaritas v. Comm'r Soc.
Sec., 264 F. App'x 155, 159 (3d Cir. 2008); see also Reefer v. Barnhart, 326 F.3d 376, 380 (3d
Cir. 2003) ("An ALJ owes a duty to a pro se claimant to help him or her develop the
administrative record.").  "In fulfilling his duty to help a pro se claimant develop the record, the
ALJ must scrupulously and conscientiously probe into, inquire of and explore for all the relevant
facts."  Kummer, 2013 WL 5467067, at *3, citing Reefer, 326 F.3d at 380.